## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JEFFREY SYLVESTER JONES,**

        **Plaintiff,**

                                    **Case No. 2:05-cv-773**

**v.**                                        **JUDGE SMITH**

                                    **Magistrate Judge Abel**

**OFFICER AARON GRALEY, *et al.*,**

        **Defendants.**

### OPINION AND ORDER

Plaintiff Jeffrey Sylvester Jones ("Plaintiff") brings this action against Defendants Officer Aaron Graley ("Graley"), Lieutenant David Suciu ("Suciu"), Chief Jeanne Miller ("Miller"), and the City of Reynoldsburg, Ohio, seeking damages and injunctive relief on federal and state law claims.  Specifically, Plaintiff filed claims under 42 U.S.C. §§ 1983, 1985, and 1986, alleging violations of his Fourth, Fifth, Eighth and Fourteenth Amendment rights. Plaintiff also alleges violations of the Ohio Revised Code and asserts state law tort claims for assault and battery.  Defendants request summary judgment in their favor on all of Plaintiff's claims. (Doc. 78).  For the reasons that follow, the Court **GRANTS** Defendants' Renewed Motion for Summary Judgment.

## I.    FACTS

On October 5, 2004, Aaron Graley and Tim Doersam, respectively an officer and a detective employed by the Reynoldsburg, Ohio police department, were conducting "knock and talks" at the Creekside Apartments in Reynoldsburg.  Graley and Doersam knocked at 8035 Fillmore Drive in response to a report that someone was selling drugs at that location.  Graley and Doersam were invited into the apartment by a woman who identified herself as Ashley, and once inside they encountered Plaintiff, who initially introduced himself as Kerry.  When Detective Doersam inquired about a blunt (a cigar filled with marijuana) on the kitchen counter, Plaintiff stated that the blunt was his.  Detective Doersam asked Plaintiff for his Social Security number, ran a check on the number, and found that Plaintiff had provided false information about his identity.  After the ID check, Plaintiff fled the Fillmore Drive apartment, and Officer Graley chased him to another apartment, located at 7944 Truman Trail.  The apartment at 7944 Truman Trail was not Plaintiff's home, and was occupied by Matthew Hamilton and a female resident at the time Plaintiff entered.  Plaintiff entered the Truman Trail apartment, asked Matthew Hamilton to lock the front door, and attempted to exit through the back door.

While Plaintiff was attempting to exit through the back door of the Truman Trail apartment, Officer Graley entered through the front door, realized the apartment was occupied, and observed Plaintiff near the back door.  Officer Graley confronted Plaintiff and fired one shot from his handgun.  The shot grazed Plaintiff in the back.

Following the shot, Officer Graley tackled Plaintiff and the two men crashed through the back screen door of the Truman Trail apartment and landed on the ground.  Plaintiff continued to struggle with Officer Graley outside.  Officer Graley grabbed his service radio (walkie-talkie) and

-2-

hit Plaintiff over the head with it until the radio broke apart.  Plaintiff's wrist was apparently

broken during the arrest.

Following the incident, Defendant Jeanne Miller, who was then Reynoldsburg's Chief of

Police, asked Defendant Suciu, then a Reynoldsburg Police Lieutenant, to conduct an internal

investigation of Officer Graley's conduct.  Lieutenant Suciu found that Officer Graley's conduct

complied with the police department's guidelines, policies, and procedures.  Chief Miller

accepted Suciu's recommendation that Officer Graley be exonerated through proper conduct, and

closed the matter.

The Ohio Bureau of Criminal Investigation also conducted an investigation of Officer

Graley's conduct.  The Bureau's findings were submitted to the Fairfield County, Ohio Grand

Jury, which issued a no-bill.

 After seeking and obtaining permission to proceed *in forma pauperis*, Plaintiff filed this

Complaint on August 15, 2005 (Doc. 3). Plaintiff was ordered on March 23, 2006 to file an

amended complaint, which he did on June 2, 2006. (Doc. 43). Defendants filed a Renewed

Motion for Summary Judgment on October 12, 2007 (Doc. 78). Plaintiff obtained counsel and

filed a Memorandum in Opposition on November 5, 2007 (Doc. 79).  Defendants filed their

Reply on November 19, 2007 (Doc. 80).  Accordingly, this matter is now ripe for review.

## II.    RULE 56 STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which

provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

Summary judgment will not be granted if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby*, *Celotex*, and *Matsushita* effected "a decided change in summary judgment practice," and ushered in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The Court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily appropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary

-4-

judgment.'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party merely to "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

In qualified immunity cases, the plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

### III.   DISCUSSION

Plaintiff Jones, in his Amended Complaint (Doc. 43) asserts both federal and state law claims against Defendants.  Defendants have moved for summary judgment on all claims. (Doc. 78).  Plaintiff's Memorandum in Opposition fails to contest Defendants' arguments with respect to all claims except the Fourth Amendment excessive force claim.  (*See* Doc. 79).  Nonetheless, for the sake of thoroughness, the Court has addressed each of the claims in turn below.

Applying the Rule 56(c) standard, this Court finds that Plaintiff Jeffrey Jones has not met his burden of demonstrating a genuine issue of material fact that necessitates a trial.

A.      **Plaintiff's Federal Claims**

Section 1983, of 42 U.S.C. is not a source of substantive rights, but "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (*quoting Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) (internal quotation marks omitted). "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (*citing West v. Atkins*, 487 U.S. 42, 48 (1988).

"[G]overnment officials performing discretionary functions are shielded from liability through 'qualified immunity' if they violate an individual's constitutional rights, but the violated right was not 'clearly established' at the time of the official's actions. *Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). *See also*, *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.").  Qualified immunity operates "to protect officers from the sometimes hazy border between excessive and acceptable force." *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

Before the Court can engage in the qualified immunity analysis, however, the Court must first consider whether the officer's conduct violated a constitutional right. *Id.* at 201.  *See also, Scott v. Harris*, 127 U.S. 1769, 1774 (2007) ("If, and only if, the court finds a violation of a constitutional right, the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case." (citations omitted)).

Accordingly, the Court will consider each of Plaintiff's alleged violations of his constitutional and federal statutory rights in turn.

### 1. Fourth Amendment Claim

Excessive force claims are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). It is the Court's duty to answer whether the officer's actions were objectively reasonable. *See Scott*, 127 S.Ct. at 1776 (expressly rejecting Justice Stevens' assertion in his dissent that the question of objective reasonableness is "a question of fact best reserved for the jury." *Id*. at 1776 n.8). As the *Scott* Court explained, "At the summary judgment stage . . . once we have determined the relevant set of facts and drawn all inferences in favor of the non-moving party *to the extent supportable by the record*, . . . the reasonableness of [the officer's] actions . . . is a pure question of law." *Id*. at 1776 n.8.

In determining reasonableness, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id*. at 1778 (*quoting United States v. Place*, 462 U.S. 696, 703 (1983). This standard is deferential to the officer's on-the-spot judgment about the necessary level of force. *Marvin*, 509 F.3d at 245. A court should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Marvin*, 509 F.3d at. 245; *Graham*, 490 U.S. at 396; *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). "[R]easonableness must be evaluated from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The definition of

reasonable force is partially dependent on the demeanor of the suspect." *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir.2004). Culpability is also relevant to the reasonableness analysis. *Scott*, 127 S.Ct. at 1778 n.10.

In the instant case, Plaintiff Jones claims that the force used in effecting his arrest was unreasonable. Specifically, Plaintiff Jones says Officer Graley's use of deadly force as well as his use of force with his service radio and in bending Plaintiff Jones' arm back were unconstitutionally excessive. (*See* Pl.'s Memo. in Opp. at 11-12). The Court disagrees.

Conspicuously absent from Plaintiff's reasonableness analysis is any mention that Plaintiff Jones was actively resisting arrest. Instead, Plaintiff states that before the shot was fired, "[t]here were no signs that Mr. Jones attempted to escape . . . ." (Pl.'s Memo. in Opp.). The record before the Court, however, presents a much different story.[1] In Plaintiff Jones' own statement, he admits that he was fleeing and resisting arrest. (Jones Statement 16-17, 25). Plaintiff further mischaracterizes the crimes at issue, stating that the at-issue crimes were possession of a marijuana cigarette and presentation of a false identity. (Pl.'s Memo. in Opp. at 8). After being found in possession and giving two false identities, however, Plaintiff (1) fled the scene and (2) feloniously entered the dwelling of another (Plaintiff pled guilty to felony attempted burglary).

Plaintiff asserts that Officer Graley should have known that Plaintiff did not have a weapon. (Pl.'s Memo. in Opp. at 8-9). This assertion disregards the fact that Officer Graley lost sight of Plaintiff during the chase. Plaintiff has presented no Rule 56 evidence to create a

---

[1]In circumstances such as these, the *Scott* Court instructed: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 127 S.Ct. at 1776.

-8-

question of fact regarding whether Officer Graley had knowledge that Plaintiff was unarmed in the apartment at 7944 Truman Trail.  Officer Graley did not know whether Plaintiff had a weapon, and he could not see Plaintiff's hands as they were running because Plaintiff was holding them in front.

It was not while Plaintiff Jones was running from Officer Graley that Officer Graley discharged his firearm, but rather when Plaintiff stopped at the back door of the occupied apartment he had invaded and turned towards Officer Graley.  It was at that time that Officer Graley saw a metallic flash that he thought was a weapon in Plaintiff's hand and fired.  Officer Graley states that he fired his gun because he "was in fear for my life and for the lives of the residents in the apartment." (Graley Statement at 8).  Plaintiff argues that it was "unreasonable, and unbelievable, to think that a rose colored, small pendant is a metal plated pistol . . . ." (Pl.'s Memo. in Opp. at 8).  Yet, Plaintiff's own statements and admissions run counter to this argument.

Plaintiff admits he was wearing a gold necklace with a *large* pendant. (*See* Jones Admissions, No. 12) (emphasis added).  He described it as "real long." (Jones Statement 8).  Plaintiff also describes how his necklace was flying around toward Officer Graley right before Officer Graley fired his weapon:

PJO:   Okay, so then he comes, you're still facing the door and he, what, does he.

JJ:    I don't know exactly what he does. Like he didn't push me until I went through the door, you know what I'm saying. I think I turned around.

PJO:   Okay, to face him?

JJ:    Yeah.

PJO:   Did you get completely around?

-9-

JJ:       No, no definitely not.

PJO:    Okay. Think you got maybe a quarter of the way around?

JJ:       Yeah.

PJO:    Halfway around?

JJ:       Yeah, and that's when the shot was fired. Like as soon like you know what I mean, like . . . here's probably what happened . . . his hand on his gun probably you know what I'm saying, he's running up behind me, and he might, *maybe he really did think it was a gun*, know what I'm saying?

PJO:    Okay, so you're.

JJ:       *. . . sees my necklace fly around or something like when I'm turning, you know what I'm saying, see my necklace fly around and just shoot, bang . . . boom, I got shot right there. That's probably how it went down.*

(Jones Statement 18-19) (emphasis added).  Plaintiff stated that as soon as they landed on the ground, Officer Graley told him that he "really thought that necklace was a gun." (Jones Statement 18).

      Plaintiff, in his Memorandum in Opposition, argues that after the shot was fired, Jones did not attempt to escape, and therefore, the force used by Officer Graley after that—the striking with a service radio and bending Plaintiff's arm back—was excessive.  Again, Plaintiff Jones, in his Statement, tells a different story.  He states that Officer Graley was trying to turn him over onto his belly, and when asked if he was resisting or fighting against that, Plaintiff replied, "Oh I'm sure." (Jones Statement 25).  Plaintiff explained " . . . I was kinda resisting or whatever . . . ." and he further admitted that there was still a struggle on the ground. (*Id*.).  Because Plaintiff continued to actively resist Officer Graley's efforts to gain control over the situation, Officer Graley used additional force.

Based upon the foregoing, the Court has no hesitation in concluding it was objectively reasonable for Officer Graley to take the action he did, especially in light of Plaintiff's invasion of an occupied apartment and his resistive behavior.  Therefore, Plaintiff has failed to establish the deprivation of his Fourth Amendment Rights.

> **2.      Fifth Amendment Claim**

Plaintiff claims that Defendants' actions violated the Fifth Amendment to the United States Constitution. (Am. Compl. 1).  To the extent he alleges the Defendants have violated his Due Process rights under the Fifth Amendment, Plaintiff is mistaken.  As noted by Defendants, the Due Process Clause of the Fifth Amendment does not apply to states.  Rather, individuals are protected from violations of their Due Process by states under Section 5 of the Fourteenth Amendment.  A Due Process claim, then, is properly brought under the Fourteenth Amendment.  Therefore, Plaintiff has failed to establish the deprivation of his Fifth Amendment Rights.

> **3.      Eighth Amendment Claim**

Plaintiff has also alleged that the Reynoldsburg Defendants' conduct infringed upon rights secured under the Eighth Amendment. (*See* Amended Complaint, Preliminary Statement).  The Eighth Amendment protects against excessive bail and fines as well as cruel and unusual punishment.  *See* U.S. Const. amend. VIII.  The Amendment "was designed to protect those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977).  The Amended Complaint does not contain allegations regarding any of the Defendants' conduct occurring after Plaintiff had been convicted of any crime, nor does it contain allegations implicating the prohibitions against excessive fines or bail. (*See generally* Amended Complaint).  Therefore, Plaintiff has failed to establish the deprivation of his Eighth Amendment Rights.

**4.      Fourteenth Amendment Claims**

Plaintiff further alleges that the Reynoldsburg Defendants' actions invoke the Fourteenth Amendment. (*See* Amended Complaint, Preliminary Statement).  The relevant portions of the Fourteenth Amendment provide for equal protection and due process of law. *See* U.S. Const. amend. XIV.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  "'To state a claim under the Equal Protection Clause a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer District*, 922 F.2d 332, 341 (6th Cir. 1990) (*quoting Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989) (en banc).

> [T]he remedies provided in § 1983 are most appropriately extended to persons who, because of the unpopularity of their lifestyles or the pervasiveness of racist animus in the community, are not protected in their attempt to enjoy peacefully and on an equal basis the civil rights guaranteed them under law.

*Smith v. Ross*, 482 F.2d 33, 37 (6th Cir. 1973).  Although equal protection claims are not limited to claims of racial discrimination, they do require a claim of "invidious discrimination based upon . . . membership in a protected class." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).

In the instant case, Plaintiff has failed to invoke the Equal Protection Clause because he makes no allegation that he was afforded disparate treatment caused by an invidious discriminatory motive as the result of being a member of a protected class.

Nor has Plaintiff invoked the Due Process Clause of the Fourteenth Amendment.  Claims that Plaintiff's life, liberty and property interests were impaired by reason of an alleged seizure

are governed by the Fourth, not the Fourteenth, Amendment. *See Albright v. Oliver,* 510 U.S. 266 (1994). Likewise, claims involving allegations of excessive force in effecting an arrest are governed under the Fourth Amendment's objective reasonableness standard rather than the Fourteenth Amendments substantive due process standards. *See e.g.*, *Graham v. Connor*, 490 U.S. 386 (1989). All of Plaintiff's due process claims involve alleged seizures by the excessive use of force. Accordingly, all such claims are governed by the Fourth Amendment. Therefore, Plaintiff has failed to establish the deprivation of his Fourteenth Amendment Rights.

     **5.**      ***Respondeat Superior* Claim under § 1983**

Because Plaintiff's constitutional rights have not been violated by Plaintiff, there is no basis for a *respondeat superior* § 1983 claim against the City of Reynoldsburg or its employees in their official capacities. *See City of Los Angeles v. Heller*, 475 U.S. 796; *Smith v. Thornburb*, 136 F.3d 1070, 1078 n.8 (6th Cir. 1998). Accordingly, Defendants are entitled to summary judgment on this claim.

     **6.**      **Conspiracy Claim under § § 1985 and 1986**

Plaintiff makes several references to conspiracy and conspiracy for the purpose of depriving him of the equal protections of laws pursuant to 42 U.S.C. § 1985. (*See* Amended Complaint, Preliminary Statement, ¶ ¶ 15, 22, 28). The "intra-corporate conspiracy" doctrine bars Plaintiff's suggestion of a civil conspiracy claim. *See Hull v. Cuyahoga Valley Joint Vocational School Dist*., 926 F.2d 505, 509 (6th Cir. 1991). It is axiomatic in conspiracy law that you must have *two* persons or entities to have a conspiracy. For example, a corporation cannot conspire with itself any more than a private individual can, and, it is the general rule that the acts of the agent are the acts of the corporation. The Sixth Circuit has been clear that the "intra-corporate conspiracy" doctrine has been "consistently applied in allegations of conspiracy under

-13-

the Civil Rights Act." *Hull*, 926 F.2d at 509.  Because all of the Defendants are the agents of the

same entity (i.e., the City of Reynoldsburg), Plaintiff's various allegations of conspiracy fail as a

matter of law, and the Reynoldsburg Defendants are entitled to summary judgment with regard to

all such claims.

      Section 1986 of Title 42 pertains to an action for neglecting to prevent a conspiracy within

the scope of § 1985 (preventing an officer from performing duties; intimidating a party, witness

or juror; or depriving a person of equal protection as the result of class-based discrimination).

Since there is no valid claim under § 1985, there cannot be a valid claim under § 1986. *See Braley*

*v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990).  Accordingly, the Reynoldsburg Defendants

are also entitled to summary judgment on Plaintiff's claim pursuant to 42 U.S.C. § 1986.

      Plaintiff has therefore failed to demonstrate that there is a genuine issue of material fact

necessitating a trial, and Defendants' motion for summary judgment is consequently **GRANTED**

with respect to Plaintiff's federal claims.  Because Defendants are entitled to summary judgment

on all of Plaintiff's § 1983 claims, the Court does not need to inquire further as to whether

Defendants were entitled to qualified immunity.  *See Saucier*, 533 U.S. at 201 ("If no

constitutional right would have been violated were the allegations established, there is no

necessity for further inquiries concerning qualified immunity.").

**B.**    **Plaintiff's State Law Claims**

      As set forth above, Plaintiff's Memorandum in Opposition fails to contest Defendants'

arguments with respect to Plaintiff's state law claims.  Regardless, the Court finds that Plaintiff's

state law claims, like his federal claims, fail.

      In the Preliminary Statement of Plaintiff's Amended Complaint, Plaintiff refers to five

criminal provisions of the Ohio Revised through which he is attempting to bring claims against

-14-

the Defendants: O.R.C. §§ 2903.10, 2903.11, 2921.52, 2923.01 and 2923.03.  These claims fail

because Ohio law does not permit civil actions to be predicated upon an alleged violation of a

criminal statute.  *See Biomedical Innovations, Inc. v. McLaughlin*, 658 N.E.2d 1084, 1086 (Ohio

Ct. App. 1995); *Brunson v. City of Dayton*, 163 F.Supp.2d 919 (S.D. Ohio 2001); *Culberson v.*

*Doan*, 125 F.Supp.2d 252, 279-80 (S.D. Ohio 2000).  The *Biomedical Innovations* court

explained, "criminal violations are brought not in the name of an individual party but rather by,

and on behalf of, the state of Ohio or its political subdivisions." 658 N.E.2d at 1086.

Applying this law to the instant case requires dismissal of Plaintiff's claims based upon

O.R.C. § § 2903.10, 2903.11, 2921.52, 2923.01 and 2923.03, which are all criminal statutes

imposing criminal penalties.

Plaintiff has also asserted state law claims of assault and battery.  As set forth above, the

Court has found that Officer Graley's actions were objectively reasonable.  Accordingly,

Defendants cannot be liable on Plaintiff's pendent state law assault and battery claims.  *See, e.g.*

*Marvin v. City of Taylor*, 509 F.3d 234, 252 (6th Cir. 2007) ("[B]ecause this Court finds that the

Defendants' actions were objectively reasonable under the § 1983 analysis, their actions are

likewise reasonable with regard to the state law assault and battery claims." (citations omitted)).

Defendants' motion for summary judgment is therefore **GRANTED** with respect to

Plaintiff's state law claims.

## IV.    DISPOSITION

For all of the foregoing reasons, the Court **GRANTS** Defendants' Renewed Motion for

Summary Judgment (Doc. 78).

The Clerk shall remove this case from the Court's pending cases list.

The Clerk shall remove Document 78 from the Court's pending motions list.

**IT IS SO ORDERED.**


*/s/ George C. Smith*_____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**